SAMUEL SAYWARD & another *vs.* HIRAM STEVENS.

Where a bill of lading expressly stipulates that certain goods named therein may be carried on deck, parol evidence is inadmissible to show that the shipper agreed that an additional portion of the goods should be so carried.

On a bill of lading whereby the owners of a vessel agree, for a gross sum, to carry and deliver a number of miscellaneous goods, unlike in kind or value, incapable of being stowed together, and bearing no definite proportion to each other in size or cost of transportation, no freight is payable, in case part of the goods are lost by being improperly stowed, unless the residue be accepted by the consignee at the port of discharge; although the lost goods can easily be supplied at that port; and although the shipowner is authorized by the bill of lading to sell the goods, if not received by the consignee within ten days after arrival, and does sell them accordingly by the description in the bill of lading, and makes up the deficiency to the purchaser.

ASSUMPSIT to recover a balance due for freight of an invoice of lumber from Boston to San Francisco. Writ dated August 16th 1851. Trial in the court of common pleas, at October term 1851, before *Hoar*, J.

The plaintiffs gave in evidence a bill of lading, dated at Bos-

ton, January 18th 1850, and signed by their agent, of which the material part was as follows : " Shipped in good order and condition by Hiram Stevens on board the good barque Galileo, Sutton, master, now lying in the port of Boston, and bound for San Francisco, to say, 1,900 feet boards, planed one side ; 11,089 feet boards, planed two sides, more or less ; eleven packages window frames and sashes ; seven boxes shingles ; two boxes hardware ; one package doors ; twelve doors ; four kegs nails ; one package sash (skylight) ; four packages stair stuff ; four packages nine pieces door frames ; two thousand clapboards ; four packages blinds ; two hundred and forty eight pieces house frame ; to be received by consignee within reach of the ship's tackle within ten days after arrival ; if not received, the captain to have the right to sell them : " " And are to be delivered in like good order and condition at the aforesaid port of San Francisco (the danger of the seas only excepted) unto H. Stevens or to assigns, he or they paying freight for said goods $926.39, and five per cent. primage and average accustomed : " " Seven boxes of shingles on deck."

There was also evidence of the following facts : All the articles named in the bill of lading were received by the plaintiffs on board the barque Galileo at Boston ; and the shingles, as well as some of the packages of door casings, window frames and sashes, and stair stuff, and a portion of the boards, were stowed on deck. All the articles so stowed were thrown overboard and lost by stress of weather. The remainder of the invoice, being stowed in the hold, arrived in safety at the port of discharge. Notice was immediately published in the newspapers to consignees, to receive their goods. After waiting thirty days, no one appearing to claim these goods, they were advertised for sale at public auction, by the description in the bill of lading, the plaintiffs' agent at San Francisco not knowing that the whole had not arrived in safety ; and they were sold accordingly by said description, except the boards, which were sold by the foot. The proceeds of the sale, deducting expenses, were $662.13, which were credited to the defendant on account of the freight. Upon delivery of the goods, the loss of about one thou-

sand feet of boards and of the other articles stowed on deck was ascertained; and the plaintiffs' agent settled with the purchaser for this deficiency by repaying him the sum of $75. Goods of the same kind and quality as those lost could be readily purchased at San Francisco at that time.

The plaintiffs offered to prove that all the articles stowed on deck were so stowed with the defendant's knowledge and assistance. But the judge rejected the evidence, and ruled that the bill of lading expressed the contract between the parties; that, in the absence of any fixed usage of trade to carry such freight in a particular manner, the obligation of the carrier, so far as the place of stowing was concerned, was to carry safely, excepting perils of the seas; and that this obligation could not be varied by parol evidence of knowledge of the owner of the goods of the manner in which they were stowed.

The defendant offered parol evidence that the several articles named in the bill of lading were originally obtained and prepared and fitted for one house, and intended to be put together as such in San Francisco. To this evidence the plaintiffs objected; but the judge admitted it, and instructed the jury that if they believed that the articles enumerated in the bill of lading constituted the parts of one house, and the portions lost were lost by reason of their being improperly stowed on deck, and were a substantial part of the house, without which the house would be wholly incomplete, and of no practical utility as a house, in short no longer the article which was shipped, then, the freight being payable on the whole in one entire sum, the plaintiffs could not recover freight for the lumber actually carried and which arrived at San Francisco, although the lost articles could be easily supplied in the market by the purchase of others of like character.

The jury returned a verdict for the defendant, and the plaintiffs alleged exceptions.

*J. J. Clarke & L. Shaw, Jr.* for the plaintiffs. 1. The rule that goods shipped may be carried under deck arises only from a presumption of law, which may be rebutted by parol evidence of the agreement of the parties. *Vernard* v. *Hudson,* 3 Sumner, 407

*The Rebecca,* Ware, 210. *Major* v. *White,* 7 Car. & P. 41. *Taunton Copper Co.* v. *Merchants' Ins Co.* 22 Pick. 108. *Sproat* v. *Donnell,* 26 Maine, 185.

2. If a carrier actually delivers a portion of a shipment entrusted to him, and pays for the loss of the residue, it is equivalent to a safe delivery of the whole shipment, and he is entitled to full freight. *Baillie* v. *Moudigliani,* 1 Park. Ins. 90. *Hammond* v. *McClures,* 1 Bay, 101. *D'Anjou* v. *Deagle,* 3 Har. & Johns. 206. Angell on Carriers, § 338. In this case, the goods not being taken by the consignee on arrival, the plaintiffs exercised the right given them by the bill of lading to sell them, which in fact gave them the power of appointing consignees for the shipper ; and sold the whole shipment, by the description in the bill of lading; and, so far as the defendant is concerned, delivered the whole to the purchaser; (for what they did not deliver in lumber, they delivered in money;) and they have credited the defendant with the value of the whole shipment; and it does not appear that the market would have been more favorable, if the vessel had arrived three months sooner. The defendant therefore has not suffered by the failure of the plaintiffs to deliver the whole of the goods shipped. A carrier is not answerable for the mere existence of negligence on his part, but only for the consequences of his negligence. *Davidson* v. *Gwynne,* 12 East, 381. *Davis* v. *Garrett,* 6 Bing. 716. *Freeman* v. *Taylor,* 8 Bing. 124. *Clipsham* v. *Vertue,* 5 Ad. & El. N. R. 265. *Hart* v. *Allen,* 2 Watts, 114. *Souter* v. *Baymore,* 7 Barr, 415.

3. The evidence that the various packages of lumber, hardware and glass constituted a complete house was inadmissible to interpolate by parol a new fact into the bill of lading, which, if it had appeared on the face of the bill, might probably have led the plaintiffs to refuse the shipment, or, at least, to have stowed it all in the hold. But even if this shipment did constitute a house, delivery of the whole was not a condition precedent to the recovery of any freight; but the plaintiffs are entitled to freight, in proportion to the amount delivered, leaving the defendant to his remedy in damages for short delivery ; especially as the deficiency could easily be supplied at San Francisco, and

was in fact made up by the plaintiffs. The fact that a sum in gross was agreed upon as the freight to be paid makes no difference. *Ritchie* v. *Atkinson,* 10 East, 308. Abbott on Shipping, (5th Amer. ed.) 266–274. *Bornmann* v. *Tooke,* 1 Campb. 377. *Havelock* v. *Geddes,* 10 East. 555. *Shields* v. *Davis,* 6 Taunt. 65. *Knox* v. *Schooner Ninetta,* Crabbe, 554. *Arthur* v. *Schooner Cassius,* 2 Story R. 98. *Post* v. *Robertson,* 1 Johns. 26. *Smith* v. *First Meeting-house in Lowell,* 8 Pick. 178.

*S. J. Gordon,* for the defendant.

BIGELOW. J. The main question in this case arises on the true interpretation of the contract between the parties, by which the plaintiffs agreed to convey the articles enumerated in the bill of lading from Boston to San Francisco. To arrive at this, it is necessary in the outset to determine whether this contract rests solely in the bill of lading, and is to depend upon the terms by which it is therein set forth, or whether it can be varied or explained by parol proof of the acts and conduct of the parties prior to and at the time of the shipment of the merchandise.

The rule is well settled, that, under the ordinary forms of bills of lading, the contract imports that goods are to be stowed under deck; and if carried on deck, the owners of the vessel will not be protected from liability for their injury or loss, by the usual exception of dangers of the sea. Abbott on Shipping, (5th Amer. ed.) 345, *note.* Whether this is a mere presumption, arising from the usual mode of conveying merchandise in vessels, and therefore liable to be rebutted in a particular case by proof of a parol contract between the owners of the vessel and the shipper that the goods were to be carried on deck, or by evidence of circumstances from which such agreement might be properly inferred, such as usage affecting a particular trade or certain kinds of merchandise, we have no occasion in the present case to determine. It may however be remarked, that as bills of lading do not usually contain any express stipulation concerning the place or mode of stowing the cargo, these being left to the care and discretion of the master of a vessel, the admission of such evidence would not seem to be a violation of the

salutary rule that written contracts cannot be varied or controlled by parol proof.

In the present case, the bill of lading is not in the usual form. It contains' an express agreement or memorandum in writing concerning the stowage of a portion of the articles shipped, which takes it out of any special rule applicable to contracts of this nature, and brings it within the general rule by which all contracts in writing are governed. The memorandum is in these words : " Seven boxes of shingles on deck." The effect of this stipulation clearly is, that the parties are not by their contract left to the ordinary presumption concerning the stowage of the cargo, nor to the usage of trade by which it may have been regulated. They have made it matter of express agreement. Looking at the nature of the contract, and taking into view not only what the parties have expressly stipulated, but also the general duty of the carrier to stow and carry under deck merchandise destined for a long voyage to a distant port, we think the bill of lading in this case is equivalent to an express agreement that the seven boxes of shingles should be carried on deck, and the residue of the shipment should be stowed under deck. In order to give any effect to the written memorandum, it necessarily imports that no part of the merchandise specified in the bill of lading is to be carried on deck, except the articles expressly included within it. To a contract thus expressed, the maxim *expressio unius exclusio alterius* is peculiarly applicable. The only fair and legitimate inference from the terms of the contract is, that the parties, before reducing their agreement to writing, conferred together concerning the stowage of the cargo, and, as the result of their ultimate intention, stipulated that only the seven boxes of shingles should be carried on deck. In this view, it is very clear that the parol proof offered at the trial tended directly to vary the terms of the written agreement, and was therefore rightly rejected.

The more important question in the case arises upon the true construction of the contract of shipment, as it is expressed in the bill of lading. The general rule is, that all contracts for the conveyance and delivery of merchandise for an agreed price are in

their nature entire and indivisible; and unless completely performed by the carrier, he is not entitled to any compensation. The undertaking is not only to carry the goods to a particular destination, but it also includes the duty of delivering them in safety; and no freight is earned until the contract for delivery, as well as of carriage, is completely fulfilled. Chit. Con. (8th Amer. ed.) 636. Angell on Carriers, § 397.

There are exceptions to this general rule, founded on principles of justice and equity, arising out of particular circumstances; but the rule itself is elementary, and lies at the foundation of this species of contract. Indeed, the definition of a bill of lading, as given by high authority, is, that it is the written evidence of a contract for the carriage and delivery of goods sent by sea, for a certain freight. Its peculiarity is, that unless freight is wholly earned by a strict performance of the voyage, no freight is due or recoverable. The contract of the carrier is indivisible, and he can recover for no portion of the voyage that has been made, until the whole is finished and the goods have reached their destination. *Mason* v. *Lickbarrow*, 1 H. Bl. 359. Angell on Carriers, § 398. The operation of this rule is sometimes hard and inequitable. For this reason, courts of law have, in many cases, readily seized upon any features in contracts for transportation, from which it could be fairly inferred that the parties intended to make them divisible and apportionable; while in other cases they have given such interpretation to the acts of parties as to substitute, in the place of the original entire contract, a new agreement, by which the shipper became bound to pay a proportional freight, although the carrier had not fulfilled the whole of the original contract on his part. Within the former class of cases are comprehended all contracts of affreightment by charter-party or bills of lading, where the freight is payable by the ton, by admeasurement, by the package or barrel, or where different portions of the same cargo are shipped upon distinct and separate terms as to freight. In all such cases, it is held that the delivery of the cargo is in its nature divisible, and the contract itself furnishes the means and the measure of apportioning the freight according to the quantity

of the cargo actually delivered. Abbott on Shipping, 266. *Ritchie* v. *Atkinson,* 10 East, 295. Within the latter class are included all cases where the shipper or consignee, by a voluntary acceptance of his goods at an intermediate port, or by a receipt of a portion of an entire shipment at the place of destination, is held to have waived the full performance of the original contract, and to be liable *pro rata* for the carriage of the goods actually received by him. Abbott on Shipping, 406. *Ship Nathaniel Hooper,* 3 Sumner, 550, 551.

Upon examination of the contract in the present case, it seems to us very clear that the contract is an entire one, and does not fall within any of the cases which authorize an apportionment of the freight. It is an agreement to transport a certain number of articles from Boston to San Francisco for an entire, aggregate sum as freight. On the part of the owners of the vessel, it is an agreement to carry and deliver all the articles enumerated in the bill of lading, for which the shipper agrees to pay and they agree to receive a sum in gross. The agreement to carry and deliver goes to the whole consideration to be paid therefor. They are mutual agreements, but that of the owners of the vessel is precedent to that of the shipper. The entire carriage and delivery were to be performed before any title to the freight money accrued to the owners. Such is the legal construction of the usual contract for the carriage of goods. That it is the necessary interpretation of the contract of the parties in the present case results not only from the entirety of the consideration, but also from the nature of the merchandise comprised in the shipment. If it had been a contract for the transportation of a cargo of similar and homogeneous articles, for an entire sum in gross, it might have been urged with some plausibility that the parties contemplated an apportionment of freight, in case of disaster or other cause, by reason of which a portion of the cargo might fail to reach its place of destination. If, for instance, a hundred barrels of flour were shipped under a bill of lading by which it was stipulated that the freight to be paid therefor should be five hundred dollars ; in such case, the delivery of an aliquot part thereof at the place of destination, forming a certain,

specific and definite proportion of the entire invoice, would furnish the basis of an accurate division and apportionment of the entire freight money, according to the amount actually carried and delivered. But, in the case at bar, the shipment is made up of a variety of miscellaneous and diverse articles, unlike in kind, quality, and value, incapable of being packed and stowed together, and bearing no definite proportion to each other in size or in cost of transportation. Having reference, therefore, to the nature of the shipment, as well as to the consideration agreed to be paid for the carriage of the articles, it is manifest that the contract affords no basis by which to divide the invoice and apportion the freight. It is an entire invoice, to be carried for an entire sum, incapable of apportionment; and where, from the nature of the contract and its subject matter, it is fair to infer that the parties intended to make their contract one and indivisible.

It follows as a necessary consequence, that the owners of the vessel, if they failed to transport and deliver the whole of the articles included in the bill of lading, by reason of the neglect of the master, are not entitled to recover the balance claimed by them for freight, unless they can show an acceptance, by the shipper or consignee at San Francisco, of that portion of the shipment which arrived there in safety, and thus bring themselves within the second class of exceptions above stated to the general rule governing entire contracts for the conveyance of merchandise. The case finds that on the arrival of the vessel at its port of discharge, no one appeared to receive or claim the goods. The consignee, owing probably to the state of the market in San Francisco, by which the merchandise was rendered of less value there than the sum agreed to be paid for the freight, failed to receive it. In the absence of an express stipulation in the bill of lading to meet such a contingency, it might have been the duty of the master, having in his charge an invoice of goods not perishable in their nature, to store them for the benefit of the shippers. It is doubtful whether he would have had the right to sell them. Abbott on Shipping, (5th Amer. ed.) 378, *note*. *Schooner Cassius*, 2 Story, R. 81. However this may

be, in the present case there was an agreement in the bill of lading, by which it was stipulated that the articles, if not received by the consignee on the day after their arrival, might be sold by the master. There was therefore no receipt of the goods by the regular consignee, from which an acceptance of them can be inferred to charge him or the shipper a *pro rata* freight thereon. It is contended, however, by the plaintiffs, that this clause in the bill of lading, giving the master, by reason of their non-acceptance, a right to sell, and a sale by him in pursuance of it are equivalent to a receipt of the articles by the consignee; that it substituted the master in his place, and conferred on him the same rights and powers to bind the shipper as his agent, and render him liable for the freight of the goods sold in like manner as the consignee would have been, if he had taken the goods on their arrival. But it appears to us that this agreement is based on too broad a construction of this clause in the bill of lading. The original intent of the parties in the insertion of this provision for a sale of the goods, was to give the master the right to realize his freight money by a sale of the goods, if they were not received and the money paid within the time specified in the bill of lading. If this was the object of the clause, then, there having been no freight earned, in consequence of the failure to carry the whole shipment, there was no right on the part of the master to sell. He exceeded his authority in making the sale, and the owners cannot bind the shipper by an unauthorized act of their master. But giving to this stipulation the most liberal construction which in any view it is capable of, it made the master the agent of both parties to sell the goods for the benefit of whom it might concern, and to hold the proceeds for those who should be legally entitled to receive them. It created a special and limited agency only, by which the master had the right to convert the merchandise into money, but not thereby to change the right of property in the proceeds, or to waive the legal rights of the parties under their contract.

We are therefore of opinion that the contract of affreightment in the present case was an entire one, by which the plaintiffs undertook the carriage and delivery of the goods specified in the

bill of lading ; and a portion of them having been lost through the fault of the master, and there being no proof of an acceptance of that portion which arrived in safety by the shipper or any authorized agent in his behalf, that the plaintiffs are not entitled to recover the balance of freight claimed to be due by them.

It was urged that the plaintiffs were entitled to their freight, because they had replaced the articles lost by payment to the purchasers of a sum equivalent to their value, and thus virtually made good the shipment in San Francisco. But the difficulty in this argument is that the master had no authority from the defendant to change his rights by any such payment. His authority was confined to a sale of the goods which arrived Beyond that, his acts could in no way affect the defendant who, if he had been present, would have been entitled to the goods free from any charge for freight.

It was further argued that the owners of a vessel are not responsible for mere abstract and inconsequential negligence on the part of the master, but only for the actual results of his faults and omissions. This may be so ; but it does not help the plaintiffs in the present case, because the jury have found, under the instructions given to them, that the goods were lost by reason of their being improperly stowed on deck. It must now, therefore, be assumed that there was actual negligence and fault on the part of the agent of the owners, by reason of which they failed to fulfil their contract.

In the view we have taken of this case, it becomes unnecessary to decide upon the admissibility of the evidence which tended to show that the articles shipped were parts of an entire structure, intended to be erected in California. It is quite sufficient, without such proof, that they formed part of an entire subject matter in the contract ; and for the reasons already given, not having been delivered by the plaintiffs according to their agreement, an action cannot be maintained for the freight money.                                  *Exceptions overruled.*